```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
UNITED STATES OF AMERICA,                :
                                         :
              -v-                        :   07 Cr. 197-01 (JSR)
                                         :
JAIRO GABRIEL MONTOYA HERNANDEZ,         :   MEMORANDUM ORDER
                                         :
              Defendant.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Upon consideration of the evidence submitted at the "Fatico" hearing held before the Court on September 23, 2009, and the pre- and post-hearing submissions by the parties, the Court finds that Jairo Gabriel Montoya Hernandez was an "organizer or leader" of criminal activity under Section 3B1.1(a) of the U.S. Sentencing Guidelines (the "Guidelines"), and is not eligible for "safety valve" relief pursuant to 18 U.S.C. § 3553(f) and Section 5C1.2 of the Guidelines. The findings of fact and conclusions of law supporting these rulings are set forth below.

Section 3B1.1 of the Guidelines mandates increasing the defendant's offense level by four levels if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," or by three levels if the defendant was "a manager or supervisor (but not an organizer or leader)" of such criminal activity. The application notes to this section further specify that the defendant need organize, lead, manage, or supervise only one other participant in order for the respective enhancements to apply. See U.S.S.G. § 3B1.1 app. note 2; accord United States v. Zichettello, 208 F.3d 72, 107 (2d Cir. 2000).

"A defendant acts as a 'manager or supervisor' of a criminal enterprise involving at least five participants if he 'exercise[s] some degree of control over others involved in the commission of the offense' or 'play[s] a significant role in the decision to recruit or to supervise lower-level participants.'"  United States v. Payne, 63 F.3d 1200, 1212 (2d Cir. 1995) (citations omitted; alterations in original).  Relatedly, the four-point "organizer or leader" enhancement requires consideration of "the degree of discretion exercised by [the defendant], the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy."  United States v. Si Lu Tian, 339 F.3d 143, 157 (2d Cir. 2003) (internal quotation marks omitted).  Factors supporting this four-level leadership enhancement include, for example, recruiting accomplices, see id. at 157, and collecting and disbursing drug proceeds, see United States v. Valdez, 16 F.3d 1324, 1355 (2d Cir. 1994).  See also U.S.S.G. § 3B1.1 app. note 4 ("Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").

The "safety valve" provisions of Title 18 of the United States Code permit the Court, in specified circumstances, to impose a sentence below an otherwise applicable mandatory minimum sentence. Safety valve relief may not be granted, however, when a defendant was an "organizer, leader, manager, or supervisor" as described in the Guidelines. See 18 U.S.C. § 3553(f)(4); U.S.S.G. § 5C1.2(a)(4).

The instant Fatico hearing arose following a series of insistent but convoluted requests made by the defendant to this Court after he entered his guilty plea (without a plea agreement) on January 21, 2009. In the months thereafter, defendant sent this Court a series of letters that, among other things, expressed dissatisfaction with his court-appointed counsel and requested a Fatico hearing for the purpose of showing his eligibility for safety valve treatment -- despite his counsel's belief that such a hearing would be inadvisable.[1] See, e.g., 5/18/09 & 6/8/09 Letters from Jairo G. Montoya Hernandez. Although defendant was unable to adduce evidence genuinely justifying substitution of his first appointed counsel, the Court nonetheless reluctantly agreed to defendant's request to substitute counsel since it would not disrupt the proceedings. After extensive discussion with his new court-appointed counsel, defendant seemingly decided to forego a Fatico hearing, see 8/27/09 Letter from Howard L. Jacobs, Esq., and a sentencing hearing

---

[1] The safety valve provisions also require a finding that the "defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

3

was set for September 23, 2009.  However, the day before the sentencing, defendant reconsidered again and requested that a Fatico hearing be held on the issue of his role in the conspiracy and eligibility for safety valve relief.  9/23/09 Fatico hearing tr. ("Tr.") at 2-3.  Once again exercising great liberality on defendant's behalf, the Court agreed to hold a Fatico hearing on September 23, 2009.

At the hearing, the government offered the testimony of defendant's own son and alleged co-conspirator, Jairo Mauricio Montoya Macias ("Macias"), as well as various exhibits (including some of defendant's own letters to the Court).  The defendant testified on his own behalf.  Although it was clear to the Court that Macias tempered his testimony in an effort to protect his father, nonetheless the Court found credible large portions of his testimony.  By contrast, the Court found defendant's testimony to be, if occasionally truthful, more often evasive, nonresponsive, and inaccurate, particularly in its attempts to minimize defendant's participation in the conspiracy.  Specifically, defendant attempted to limit his role to that of an "intermediary" who collected money from investors in the conspiracy, see id. at 19, and he denied having recruited or supervised couriers, see id. at 19-20.  By contrast, Macias testified, in testimony the Court found wholly credible, that defendant gave money to Alvaro Morales to buy heroin, id. at 29-30; that defendant instructed Carlos Suescun, a courier, regarding which hotel to stay at in New York; id. at 34; that defendant had conversations about Suescun's whereabouts at the time Suescun was

4

arrested, id. at 36-37; that defendant spoke with Macias about the route of a heroin shipment to the U.S. that defendant wanted followed (as it was), id. at 35; and that, in general, defendant took a major role in bringing the drug proceeds into Colombia and distributing them to investors, id. at 37-38.

    Macias's credible testimony was further corroborated by statements received in evidence as to what the defendant said in his post-arrest interview given on June 1, 2007.  See Gov't Ex. 11.  In that interview, defendant admitted to (1) sending a "mule" named "Jennifer" to the U.S. in 2005 (id. at 2); (2) purchasing heroin and hiring a courier to transport it from Bogota to Medillín, and also hiring a man known as "El Tío" to pack the drugs inside a suitcase (id. at 2-3); (3) instructing a courier to transport heroin on another occasion (id. at 3); (4) hiring another man to pack shoes with heroin (id. at 4); (5) sending a courier to Argentina to deliver drugs (id.); (6) forming, along with his son and two others, a drug trafficking organization called "Los Combos" (id. at 5); and (7) arranging for Alvaro Morales's sister to transport a quantity of heroin after Morales recruited her (id. at 6).  Further, the Government submitted an exhibit summarizing certain intercepted telephone calls involving defendant.  Gov't Ex. 20.  These summaries indicate that on several occasions, defendant made travel arrangements for couriers and otherwise instructed them on the logistics of drug deliveries.  These calls also show that defendant received frequent updates on the whereabouts of couriers and whether they had been arrested.

In addition, it is clear from the <u>Fatico</u> hearing testimony that defendant had a significant role in collecting and distributing money from investors.  <u>See</u> tr. at 5-6, 37-38.  In his letters to the Court, defendant admitted to playing an even greater role by investing in several drug shipments himself, <u>see</u> 5/18/09 Letter from Jairo Gabriel Montoya Hernandez.  And in his post-arrest interview, defendant acknowledged not only investing drug shipments, but also purchasing certain of them.  <u>See</u> Gov't Ex. 11 at 2.

In sum, the Court finds that the defendant played a significant leadership role in essentially every aspect of the conspiracy.  His role included investing in certain drug shipments, collecting funds from other investors in the conspiracy, recruiting certain drug couriers, paying and instructing other conspiracy participants to transport drugs, directing travel and other logistical arrangements for couriers, and distributing the proceeds of the drug sales to investors.  His role manifested the degree of decision-making authority, involvement in recruiting as well as planning and executing the offense, and general control over conspiracy participants that is required to support the four-level "organizer or leader" enhancement under Guidelines Section 3B1.1(a).  The Court therefore finds that a four-level enhancement is warranted.  Furthermore, the Court finds that the remaining element of a Section 3B1.1 enhancement, which requires that the criminal activity in question be sufficiently extensive, is satisfied because defendant's criminal activity involved five or more participants.  No fewer than

seven of defendant's co-conspirators have pleaded guilty before this Court.

Because defendant's conduct in this drug conspiracy establishes him as an "organizer, leader, manager, or supervisor of others in the offense," he is not eligible for "safety valve" relief under 18 U.S.C. § 3553(f) or Guidelines Section 5C1.2.

The parties are directed to jointly call the Court no later than November 5, 2009, to set a date for defendant's sentencing.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       November 3, 2009